Benjamin H. Henry
vs.                    } No.66648
United Electric Ryys. Co.

Vera L. Henry
vs.                    } No.66649
United Electric Rwys. Co.

RESCRIPT

January 27, 1927

CAPOTOSTO, J. These two cases for personal injuries sustained by husband and wife in a collision between an automobile and an electric car of the defendant company resulted in a verdict for Mr. Henry in the sum of $1450 and for Mrs. Henry in the sum of $3250. The defendant moves for a new trial upon all of the usual grounds.

Mr. Henry, driving a Ford touring car, started from his home in Warwick to go to his work in Providence about 7:30 in the morning of July 8, 1925. His wife, who was also employed and then working at the Victor Cleansing Company, was seated in the front seat to his right. Mr. and Mrs. Henry lived on Second avenue in the town of Warwick. Second avenue, in spite of its name, was then nothing more than a cart-path on the west side of Elmwood avenue running through land recently platted into house lots. Just before reaching the car tracks, which are located on the westerly side of Elmwood avenue and within five or six feet of a growth of trees and bushes at the northwest corner of the two streets, Second avenue, at the time of the accident, formed a pronounced gully, the upgrade of which ended close to the first rail. The growth referred to is such as to make it a blind and dangerous corner in reference to an electric car travelling south for anyone coming out of Second avenue with the intention of proceeding in a northerly direction toward Providence. One of the plaintiffs' witnesses, some five feet, seven or eight inches tall, referring to this corner, said that the bushes there were quite thick and that on foot you could not see an electric car till "it got on you." Another witness said that it was a bad place, that there were a lot of trees and bushes at both corners and that "you have got to stop pretty near to the car tracks" before you can see an electric car coming. Still another witness said that it was a blind corner, with bushes and trees extending to the sidewalk, and that to look down (that is, in a northerly direction), you have to be up to the sidewalk. It is well to note here, perhaps, that the sidewalk referred to by the last witness exists only as a matter of future development rather than an actual fact. The day was clear, the road dry and traffic on Elmwood avenue in the vicinity of Second avenue both on foot and by vehicle rather heavy.

The plaintiffs' testimony in substance was that they both were familiar with the conditions existing at this corner; that on the morning in question they drove their car towards the car tracks at a slow rate of speed, and that when the front wheels of the automobile were at or just over the first rail, Mr. Henry stopped his car for an opportunity to get into the proper traffic line; that at this time they and each of them for the first time looked for an electric car, and that it was then that they saw an electric car some 210 or 225 feet away travelling at a fast rate of speed. When the automobile was in this position, stopped and with the engine running, the rear of the automobile was on the down-grade as one looks away from the rails. Mr. Henry further testified that under these conditions he put his car in reverse; that he was unable to back an inch on account of the "stones around" and "in back" of the automobile; that he then turned his wheels in the same direction as the oncoming electric car was going and that, shortly after, the car struck the left front of his automobile and dragged it some appreciable distance. Mrs. Henry said that when she first saw the car 210 feet or so away, she did nothing more for her own protection than to cover her eyes with her husbands and await the crash, although she admitted that the automobile was then stopped and she could have gotten out by merely opening the door to her right.

Both plaintiffs and some of the other witnesses whose attention was first attracted by the noise of the collision testified that they heard no gong, whistle or other warning from the approaching electric car.

The defendant presents an entirely different version of the occurrence. Its claim is that as the electric car came along this sparsely settled section at the rate of between fifteen to twenty miles an hour and had reached a point some fifty feet from the corner of Second avenue, the plaintiffs' automobile, then some six or eight feet from the first rail, was coming up the incline toward the track at a speed of five or six miles an hour; that the motorman immediately threw off his power, put on his reverse, but in spite of every effort on his part, the collision occurred.

One of the few passengers on the electric car was produced as a witness by the defendant and she was the only apparently disinterested person who testified as to how the accident happened. Miss Frances G. Cotter said that she occupied the front seat on the right side of this closed electric car; that her attention was first attracted to something unusual happening when she was thrown forward by the sudden reversing of the car; that she then looked ahead and saw a moving automobile on her right hand side coming onto the railroad tracks, and that at that time the electric car was not more than eight or nine feet away. She also testified, as did the motorman and conductor, that a signal whistle had been given at some indeterminate distance from the point of collision. This witness impressed the Court as sincere and her evidence worthy of belief.

The testimony of Mr. Henry is directly contradictory in certain aspects and unconvincing and improbable in others. It is directly contradicted by a sworn statement made by the plaintiff and reduced to writing by Joseph A. Lockhart, an agent of the defendant, on the very day of the accident. This statement, signed by the plaintiff with a cross on account of claimed injuries to his wrist, was witnessed by the plaintiff's mother-in-law, Mrs. Minnie L. Lynch. The superficial and labored explanation which the plaintiff gave in attempting to avoid the force of this statement is best characterized by his testimony that

he would "neither deny nor admit" anything contained in the statement wherein he is quoted as saying that when his "front wheels were on the first rail * * * the car was right there or about one-half car length away. I just had time to put foot on reverse when collision took place." His testimony at the trial that his automobile, although in reverse, would not back down the incline and away from the tracks on account of the stones around and in back of it is hard to believe. He admits coming up the incline towards the tracks without apparent interference from stones or rocks. It is increditable that during the short space of time that he was stopped at the first rail, according to his story, waiting for traffic to clear so that he might proceed on his way, such a convulsion of nature occurred that the backward motion of his automobile was prevented by the presence of stones which had in no way limited its forward movement. His explanation of why the automobile did not back away from the tracks as given in his statement is undoubtedly what actually occurred, that is, that as he attempted to put his car in reverse the accident happened.

Whether the defendant's motorman was guilty of any omission of duty towards the plaintiffs is a matter of serious doubt. While a street railway must operate its cars in a reasonable manner, it is also required to cover considerable territory with reasonable diligence and according to an approved schedule. The speed must, therefore, of necessity vary at different times and under different conditions. As to whether a gong should be rung or a blast or two of the whistle given in travelling through a country district is also a matter which varies with conditions and rests to a great extent on the sound judgment of the motorman. It can not be said that a motorman is

under a specific duty to give such warning at every cart path which, in name at least, has been raised to the dignity of an avenue by the development of unoccupied brush land. Even if we concede that there might be a possible question of negligence on the part of the defendant's motorman, yet we are forced to the conclusion that the great weight of the credible testimony in the case shows Mr. Henry disregarding the most elementary rules of care for his own safety by heedlessly running his automobile in front of an electric car which was so close to the point of crossing as to make a collision inevitable. In the case of this plaintiff, the defendant's motion for a new trial is granted.

In the opinion of this Court, the case of Mrs. Henry stands in no better light. Putting aside, as was done in the trial of this case, any possible application of the family automobile doctrine and treating the case of Mrs. Henry upon the more liberal theory that at the time of the accident she was a passenger in the automobile, her case fails to be supported by the weight of the credible testimony on either the question of liability or damages. When and to what extent it is the duty of a passenger in an automobile to exercise care for her own safety is clearly stated in Coughlin vs. Rhode Island Company, 44 R. I. 64 at page 67.

Mrs. Henry with full knowledge of the potential danger at the dangerous intersection at hand did absolutely nothing for her own safety until the front wheels of the automobile in which she was riding had actually reached or crossed the first rail of the car track. It was then for the first time that she looked for danger from an approaching car. To say that this was the course of ordinary prudence in the case of a passenger who has knowledge of the dangerous situation which she is approaching is to say, in effect, that a passenger has

a right to rely implicitly on the driver of the automobile. This Court does not understand that to be the law.

On the question of damages, the testimony bearing upon the plaintiff's principal injury is fragmentary and shrouded in considerable doubt. She had suffered from and had been operated upon for an ailment which, if explained by her family physician, might have thrown considerable light upon the actual cause of her physical condition. The plaintiff saw fit to call as witnesses two doctors previously unknown to her, who treated her for some time immediately after the accident. She did not deem it necessary either to call or explain the absence of her family physician, Dr. Nestor of Providence, who had cared for her before and has attended her since the accident. The hazy testimony of the plaintiff on a controlling point on the question of damages left considerable doubt as to the real cause of the main injury for which she now seeks to recover. Even if the Court were of the opinion that the defendant was liable in the case of Mrs. Henry, it would be in a quandary on the question of damages. Rather than indulge in pure speculation or conjecture which might result in hardship to one or the other party, the Court in view of all the circumstances believes that a new trial on both the question of liability and damages would best serve the ends of justice in the case of this plaintiff.

Defendant's motion for a new trial in each case is granted.

For plaintiffs: O'Shanuessey and Cannon.

For defendant: Clifford Whipple.